**IN THE SUPREME COURT OF APPEALS OF WEST VIRGINIA**

**January 2016 Term**

_____

**No. 15-0011**

_____

FILED

**March 2, 2016**

released at 3:00 p.m.
RORY L. PERRY II, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**GERALD A. PHILLIPS and
TERESA L. PHILLIPS,**
**Petitioners**

**v.**

**JOSHUA D. STEAR,**
**a resident of West Virginia, and**
**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,**
**a foreign company,**
**Respondents**

_____

**Appeal from the Circuit Court of Lewis County**
**The Honorable Kurt W. Hall, Judge**
**Civil Action No. 11-C-85**

**REVERSED AND REMANDED**

_____

**Submitted: January 26, 2016**
**Filed: March 2, 2016**

C. Paul Estep, Esq.                          G. Thomas Smith, Esq.
Estep & Shaffer, L.C.                        Afton L. Aman, Esq.
Kingwood, West Virginia                      Smith, McMunn & Glover, PLLC
Counsel for the Petitioners                  Clarksburg, West Virginia
                                             Counsel for the Respondents

**CHIEF JUSTICE KETCHUM delivered the Opinion of the Court.**

**JUSTICE LOUGHRY concurs in part, and dissents in part, and reserves the right
to file a separate opinion.**

**SYLLABUS BY THE COURT**

1.      "A motion to vacate a judgment made pursuant to *Rule* 60(b), W.Va.R.C.P., is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion."  Syllabus Point 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

2.      "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review."  Syllabus Point 4, *Keesecker v. Bird*, 200 W.Va. 667, 490 S.E.2d 754 (1997).

3.      Rule 60(b)(3) of the *West Virginia Rules of Civil Procedure* permits a court to relieve a party from a final judgment for fraud, misrepresentation, or other misconduct of an adverse party.

4.      To prevail under Rule 60(b)(3) of the *West Virginia Rules of Civil Procedure*, the moving party must establish by clear and convincing evidence that the opposing party obtained a judgment by fraud, misrepresentation, or other misconduct, and that this conduct prevented the moving party from fully and fairly preparing or presenting a claim or a defense.  In considering these requirements, the trial court must balance the principles that litigation must be brought to an end and that justice should be done.

5.      Fraud under Rule 60(b)(3) of the *West Virginia Rules of Civil Procedure* generally involves intentional acts.  However, misrepresentation and misconduct may involve negligent or intentional actions.

6.	Rule 60(b)(3) of the *West Virginia Rules of Civil Procedure* is aimed at judgments that were unfairly obtained, not at those that are merely factually incorrect.

7.	To the extent that *Gerver v. Benavides*, 207 W.Va. 228, 530 S.E.2d 701 (1999) conflicts with this opinion it is overruled.

Chief Justice Ketchum:

In this appeal from the Circuit Court of Lewis County, a plaintiff asserts that a defendant engaged in fraud, misrepresentations, or misconduct to obtain a favorable jury verdict. Specifically, the plaintiff contends the defendant concealed, or failed to reveal, evidence specifically asked for in discovery, and then presented a defense at trial directly contrary to the undisclosed evidence. The plaintiff moved to set aside the judgment entered on the jury's verdict under Rule 60(b)(3) of the *West Virginia Rules of Civil Procedure*.

The circuit court denied the plaintiff's motion to set aside the judgment. As we discuss below, we find that the circuit court abused its discretion and should have granted the motion. The defendant's clear misrepresentation and misconduct in discovery precluded the plaintiff from fully and fairly preparing for and rebutting the defendant's claims at trial, and the resulting verdict was unfairly obtained. We vacate the circuit court's judgment order, and remand the case for a new trial.

**I.**
**FACTUAL AND PROCEDURAL BACKGROUND**

The plaintiff is Gerald A. Phillips, a commercial truck driver. Phillips's complaint alleges that the defendant, Joshua D. Stear, carelessly engaged in an act of "road rage" on Interstate 79. Phillips contends that late in the afternoon of December 3, 2010, Stear negligently veered in front of Phillips's truck and slammed on his brakes. Phillips swerved to avoid Stear, wrecked and was injured. Stear then fled the scene, but a

1

witness followed Stear and obtained his license plate number. A State Trooper later cited Stear for making an improper lane change, and Stear pleaded no contest to the citation.

Stear's liability insurance carrier settled for its policy limits. Thereafter, the underinsured motorist carrier on Phillips's truck (State Farm Mutual Automobile Insurance Company) took over the defense in the name of Stear. Phillip's lawsuit was tried to a jury between March 25 and March 27, 2014.

Stear's defense at trial was that he did not cause the accident and was unaware of the accident until he was approached by a State Trooper ten days later. Stear conceded that he might have been driving on the same stretch of interstate highway as Phillips at the time of the accident, while making his daily two-hour drive home from work. However, he argued his vehicle was mistakenly identified and he was falsely accused.

Although Stear claimed he was mistakenly identified, the evidence at trial showed the following: Phillips testified he wrecked swerving to avoid a maroon-colored late model Chevrolet sedan with one occupant who "gave him the finger." A second witness testified at trial that the accident was caused by a "reddish or maroon color" General Motors vehicle with several occupants, one of whom "sort of flipped the bird or something." A third witness, however, saw Phillips wreck avoiding "a maroonish color Chevy" (with one occupant, a man with short hair) before the vehicle sped away. The third witness gave chase, followed the vehicle and called 911. The third witness gave the 911 operator the vehicle's license plate number, identifying it as a "Chevy Malibu," but then corrected herself and identified it as a "maroon Chevy Impala."

2

Using the license plate number, the State Police identified the vehicle that caused the wreck as a 2008 Chevrolet Impala (with a "red jewel tint" color) owned by Stear.

In addition to asserting mistaken identity, Stear introduced his character into evidence. Without any objection by the plaintiff's lawyer, Stear essentially testified that he was by nature a careful driver and that slamming on his brakes in front of another driver would be inconsistent with his driving habits. Stear asserted (again, without objection) that he not only observed speed limits, but that he routinely drove slower than the speed limit to save gasoline. To further support this claim, defense counsel (without any objection from plaintiff's counsel) asked Stear about his lack of traffic citations:

> Q. You, traveling I-79 five or six days a week, must have had a lot of speeding tickets.
>
> A. Not one.
>
> Q. Not one? . . .
>
> A. Yes, sir.
>
> Q. When's the last time you had a speeding ticket?
>
> A. Maybe 2006.

On re-examination, counsel for the plaintiff confirmed Stear's testimony that he'd had no recent traffic citations:

> Q. No speeding tickets at all?
>
> A. Not since, I'd say, probably 2006, to the best of my recollection.

3

Following that answer, plaintiff's counsel tried to impeach Stear and asked him about a recent, August 2011, traffic citation for speeding.[1] Stear said, "I don't recall the incident." Plaintiff's counsel then asked to approach the witness with a report showing the traffic citation.[2]

Acting *sua sponte*, the circuit court interrupted counsel's questioning and demanded to see the plaintiff's traffic citation report. The circuit court lectured plaintiff's counsel that he could "be in trouble" for using the traffic citation report because "these are for law enforcement purposes" and "are not certified records of any kind of conviction." At the request of defense counsel, the circuit court instructed the jury that plaintiff's traffic citation report was "not an acceptable document." The circuit court also told the jury to disregard plaintiff's counsel's suggestion that he had any report purporting to show Stear had been convicted of any traffic offense. The judge stated to plaintiff's counsel before the jury, "you can ask him the question if he had a speeding ticket . . . and he's denying that, so I think that's about as far as we can go with it."

At the close of trial, the jury returned a verdict that Phillips had failed to prove by a preponderance of the evidence that Stear negligently caused the accident. The circuit court entered a judgment order on the jury's verdict on April 10, 2014.

---

[1] "The credibility of a witness may be attacked and impeached by any party, including the party calling the witness." W.Va.R.Evid. Rule 607 [2014].

[2] The traffic citation report is not in the record. We discern from the record, however, that the report was an informal printout obtained from a police officer showing Stear had at least one prior conviction for speeding in August 2011.

Plaintiff Phillips timely filed a motion, pursuant to Rule 60(b)(3) of the *Rules of Civil Procedure* seeking relief from the judgment on the basis of "fraud . . ., misrepresentation, or other misconduct of an adverse party[.]"[3] Phillips alleged that Stear had lied about numerous traffic citations in both pre-trial discovery and at trial.

Specifically, Phillips pointed to Stear's September 2011 response to an interrogatory asking about his prior traffic citations. Stear's response admitted to only one prior citation from five years earlier, in 2006. However, Phillips produced with his motion a certified court document showing that six weeks before answering the interrogatory, in August 2011, Stear had been cited for speeding. Phillips produced another court document showing Stear was cited for reckless driving in 2001. Phillips also produced an affidavit from Stear's ex-wife attesting to four or five traffic citations between 2001 and 2006. She further attested to Stear having a "driving disagreement" with a commercial truck driver that resulted in a physical altercation during the same period.

Plaintiff Phillips argued that Stear's defense hinged on his testimony that speeding and unsafe driving were inconsistent with his driving habits. Additionally, Phillips asserted Stear gave fraudulent, perjurious testimony when he said he could only recall one prior traffic citation, from 2006. Because Stear concealed prior traffic citations

---

[3] For the pertinent text of Rule 60(b)(3), see *infra*, footnote 19. Any motion under Rule 60(b) shall "be made within a reasonable time," and for motions under Rule 60(b)(1), (2), or (3), "not more than one year after the judgment[.]" Counsel for Phillips timely filed the motion on May 30, 2014. Counsel also timely filed a motion for a new trial pursuant to Rule 59 of the *Rules of Civil Procedure*.

during discovery, and misled the jury about prior traffic citations in his testimony, Phillips asserted that the verdict was unjust.

Defendant Stear responded to the plaintiff's assertions by arguing that his testimony about traffic citations was equivocal. Stear did not deny that he received a citation in 2011, only that he could not remember. When counsel asked when he last had a speeding ticket, Stear said, "Maybe 2006," "to the best of my recollection." And as for the 2001 conviction, Stear asserts he was never asked about it and forgot about it because it was so old.

In an order dated October 20, 2014, the circuit court denied Phillips's motion for relief from judgment. Interpreting Rule 60(b)(3), the circuit court found (with emphasis added) that the plaintiff was required to establish "*intentional* deception or misrepresentation" by the defendant to be successful. The circuit court found Phillips's evidence of traffic citations merely showed Stear was unable to recall his past citations, and ruled that "[a]n inability to recall does not indicate intentional deception or misrepresentation." The circuit court's order makes no mention of Stear's inaccurate answers to discovery, or its effect upon plaintiff's counsel's ability to effectively cross-examine Stear at trial.

The plaintiff now appeals the circuit court's order denying his Rule 60(b)(3) motion for relief from the final judgment.

6

## II.
## STANDARD OF REVIEW

A motion to vacate a judgment under Rule 60(b) of the *West Virginia Rules of Civil Procedure* is a motion within the sound discretion of the trial court, and the trial court's ruling will not be disturbed on appeal unless there is a showing of an abuse of the trial court's discretion:

> A motion to vacate a judgment made pursuant to *Rule 60(b), W.Va.R.C.P.,* is addressed to the sound discretion of the court and the court's ruling on such motion will not be disturbed on appeal unless there is a showing of an abuse of such discretion.[4]

"When Rule 60(b) is in play, we ordinarily defer to the trial judge's more intimate knowledge of the case."[5]

The plaintiff's appeal asks that we interpret Rule 60(b). "An interpretation of the *West Virginia Rules of Civil Procedure* presents a question of law subject to a *de novo* review."[6] Rule 60(b) is patterned after Rule 60(b) of the *Federal Rules of Civil Procedure*, and we give substantial weight to federal cases in determining the meaning and scope of our rules.[7]

---

[4] Syllabus Point 5, *Toler v. Shelton*, 157 W.Va. 778, 204 S.E.2d 85 (1974).

[5] *Anderson v. Cryovac, Inc.*, 862 F.2d 910, 923 (1st Cir. 1988).

[6] Syllabus Point 4, *Keesecker v. Bird*, 200 W.Va. 667, 490 S.E.2d 754 (1997).

[7] *See, e.g., State ex rel. J.C. v. Mazzone*, 233 W.Va. 457, 463, 759 S.E.2d 200, 206 (2014); *Williams v. Precision Coil*, 194 W.Va. 52, 58 n. 6, 459 S.E.2d 329, 335 n. 6 (1995); *Painter v. Peavy*, 192 W.Va. 189, 192 n. 6, 451 S.E.2d 755, 761 n. 6 (1994).

# III.
## ANALYSIS

Plaintiff Phillips appeals the circuit court's refusal to set aside the judgment under Rule 60(b)(3). Phillips asserts that Stear brought his own character into issue by offering testimony that he would never commit an act of "road rage," and testified to his good driving record as support. Phillips asserts he simply never expected Stear to testify, let alone lie, about his driving record at trial, and did not discover until after trial the extent of Stear's misrepresentations about the traffic citations he had received. Stear's misrepresentations and misconduct in discovery and at trial, when combined with the circuit court's refusal to permit Stear to be impeached with evidence of his driving record, resulted in an unfair verdict.

Defendant Stear responds that Phillips failed to prove Stear's testimony was intentionally fraudulent. Stear mistakenly argues that only intentional misrepresentations can form the basis for relief under Rule 60(b)(3). Stear contends that there was no intentional malfeasance and he was simply unable to recall any recent citations at trial. He further complains that Phillips could not offer any admissible documentation at trial to refresh his recollection. Although Phillips attempted to present evidence of a recent traffic citation at trial, Stear asserts it and the other newly discovered evidence of traffic citations were not admissible and therefore could not be used for impeachment purposes.

Before examining the parties' arguments, we must first discern the guideposts for circuit courts to follow in considering motions under Rule 60(b)(3).

## A. Rule 60(b) in General

*West Virginia Rule of Civil Procedure* 60(b) sets forth six grounds upon which a trial court may vacate a final judgment. The salutary purpose of Rule 60(b) is to permit a court, within its discretion, to "redress any injustices that may have resulted because of excusable neglect or the wrongs of an opposing party."[8]

The *Rules of Civil Procedure* are intended to assure a fair contest between litigants, and Rule 60(b) is designed to accomplish justice and "facilitate the desirable legal objective that cases are to be decided on the merits."[9]

> The purpose of Rule 60(b) is to define the circumstances under which a party may obtain relief from a final judgment. The provisions of this rule must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments, expressed in the doctrine of res judicata, and the incessant command of the court's conscience that justice be done in light of *all* the facts.[10]

---

[8] *Nevada Indus. Dev., Inc. v. Benedetti*, 103 Nev. 360, 364, 741 P.2d 802, 805 (1987). *See also*, Syllabus Point 2, in part, *Hustead on Behalf of Adkins v. Ashland Oil, Inc.*, 197 W.Va. 55, 56, 475 S.E.2d 55, 56 (1996) (At its essence, Rule 60(b) provides "a mechanism for instituting a collateral attack on a final judgment in a civil action when certain enumerated extraordinary circumstances are present.").

[9] *Toler*, 157 W.Va. at 785, 204 S.E.2d at 89.

[10] *Bankers Mortg. Co. v. U.S.*, 423 F.2d 73, 77 (5th Cir. 1970). *Accord*, *N.C. v. W.R.C.*, 173 W.Va. 434, 437, 317 S.E.2d 793, 796 (1984). *See also*, Franklin D. Cleckley, Robin Jean Davis & Louis J. Palmer, Jr., *Litigation Handbook on West Virginia Rules of Civil Procedure* 1294-95 (4th Ed. 2012) (same).

Rule 60(b) "attempts to strike a proper balance between the conflicting principles that litigation must be brought to an end and that justice should be done,"[11] and "enables a court to grant relief from a judgment in circumstances in which the need for truth outweighs the value of finality in litigation."[12]

A trial court, "in the exercise of discretion given it by the remedial provisions of Rule 60(b), should recognize that the rule is to be liberally construed for the purpose of accomplishing justice."[13] A trial court's careful exercise of discretion under the rule furnishes an escape valve to protect the fairness and integrity of litigation. "[S]ince parties ought not to benefit from their own mis-, mal-, or nonfeasance, uncertainties attending the application of hindsight in this area should redound to the movant's benefit."[14] This is not to say that final judgments should be lightly disturbed, particularly one based on a jury verdict returned after a trial on the merits. Any motion for relief under Rule 60(b) must be considered in light of the policy of protecting the

---

[11] 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2851 at 286 (3d ed. 2012).

[12] 12 *Moore's Federal Practice* § 60.02[2] (3d ed. 2015).

[13] *Toler*, 157 W.Va. at 784-85, 204 S.E.2d at 89. *See also*, Syllabus Point 2, *Hamilton Watch Co. v. Atlas Container, Inc.*, 156 W.Va. 52, 53, 190 S.E.2d 779, 780 (1972) ("Inasmuch as courts favor the adjudication of cases on their merits, Rule 60(b) of the West Virginia Rules of Civil Procedure should be given a liberal construction."); *Kelly v. Belcher*, 155 W.Va. 757, 773, 187 S.E.2d 617, 626 (1972) ("Rule 60(b) . . . should be liberally construed for the purpose of accomplishing justice[.]").

[14] *Anderson v. Cryovac, Inc.*, 862 F.2d at 924.

finality of judgments. However, a motion under Rule 60(b) should be cautiously construed "to prevent the judgment from becoming a vehicle of injustice."[15]

"[T]he weight of authority supports the view that Rule 60(b) motions which seek merely to relitigate legal issues heard at the underlying proceeding are without merit."[16] A Rule 60(b) motion is "designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law."[17] "Where the motion is nothing more than a request that the court change its mind, it is not authorized by Rule 60(b)."[18]

## B. Rule 60(b)(3)

At issue in this case, Rule 60(b)(3) of the *West Virginia Rules of Civil Procedure* permits a court to relieve a party from a final judgment for fraud, misrepresentation, or other misconduct of an adverse party.[19] The adverse party's

---

[15] *United States v. Walus*, 616 F.2d 283, 288 (7th Cir. 1980).

[16] *Powderidge Unit Owners Ass'n v. Highland Properties, Ltd.,* 196 W.Va. 692, 705, 474 S.E.2d 872, 885 (1996).

[17] *Id.*

[18] *Litigation Handbook on West Virginia Rules of Civil Procedure* at 1296.

[19] Rule 60(b)(3) states, in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: . . . (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; . . . The motion shall be made within a

(continued . . .)

11

conduct complained of may occur at any time during the course of the litigation, including during discovery or trial. Rule 60(b)(3) measures the effect of the conduct upon the final judgment. Under this subsection of the Rule, "[f]raud and circumvention in obtaining a judgment are ordinarily sufficient grounds for vacating a judgment, particularly if the party was prevented from presenting the merits of his case."[20]

Hence, the general rule is that to prevail on a motion under Rule 60(b)(3), the movant must show that the opposing party engaged in fraud, a misrepresentation or some other type of misconduct. The movant must then demonstrate that the complained of conduct prevented the movant from fully and fairly preparing or presenting a meritorious claim or defense.[21] As Louis Palmer and Justice Davis state in their seminal

---

reasonable time, and for reason[] . . . (3) not more than one year after the judgment, order, or proceeding was entered or taken. A motion under this subdivision (b) does not affect the finality of a judgment or suspend its operation. This rule does not limit the power of a court . . . to set aside a judgment for fraud upon the court.

[20] 11 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 2860 at 411 (3d ed. 2012) (quoting *Assmann v. Fleming*, 159 F.2d 332, 336 (8th Cir. 1947)).

[21] *See Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995) ("In order to obtain relief under Fed. R. Civ. P. 60(b)(3), the movant must prove that: (1) the party maintained a meritorious claim at trial; and (2) because of the fraud, misrepresentation or misconduct of the adverse party; (3) the party was prevented from fully and fairly presenting its case at trial."); *Atkinson v. Prudential Prop. Co.*, 43 F.3d 367, 372-73 (8th Cir. 1994) ("To prevail on a motion under Rule 60(b)(3), the movant must show, with clear and convincing evidence, that the opposing party engaged in a fraud or misrepresentation that prevented the movant from fully and fairly presenting its case."); *Anderson v. Cryovac, Inc.*, 862 F.2d at 923 ("the moving party must demonstrate misconduct—like fraud or misrepresentation—by clear and convincing evidence, and

(continued . . .)

12

treatise on the *Rules of Civil Procedure*, "The moving party must demonstrate fraud, misrepresentation or other misconduct by clear and convincing evidence, and must also show that the complained of conduct foreclosed full and fair preparation or presentation of the movant's case."[22]

### 1. Fraud, Misrepresentation, and Other Misconduct

In the context of Rule 60(b)(3), fraud, misrepresentation, and misconduct are each separate and distinct grounds for relief.

The concept of fraud is quite broad and, as Justice Davis once noted, is a "generic term, embracing all multifarious means which human ingenuity can devise, and which are resorted to by one individual to get advantage over another by false

---

must then show that the misconduct foreclosed full and fair preparation or presentation of its case"); *In re M/V Peacock on Complaint of Edwards*, 809 F.2d 1403, 1404-05 (9th Cir. 1987) ("To prevail under the cited portion of the Rule, the moving party must establish that a judgment was obtained by fraud, misrepresentation, or misconduct, and that the conduct complained of prevented the moving party from fully and fairly presenting the case."); *Stridiron v. Stridiron*, 698 F.2d 204, 207 (3d Cir. 1983) ("To prevail, the movant must establish that the adverse party engaged in fraud or other misconduct, and that this conduct prevented the moving party from fully and fairly presenting his case."); *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981) ("As a threshold matter, the movant must demonstrate the existence of a meritorious claim or defense. A party seeking relief under subsection (3) of the rule must also prove the misconduct complained of by clear and convincing evidence and demonstrate that such misconduct prevented him from fully and fairly presenting his claim or defense."); *Rozier v. Ford Motor Co.*, 573 F.2d 1332, 1339 (5th Cir. 1978) ("One who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence. The conduct complained of must be such as prevented the losing party from fully and fairly presenting his case or defense.").

[22] *Litigation Handbook on West Virginia Rules of Civil Procedure* at 1309.

suggestions or by suppression of truth, and includes all surprise, trick, cunning dissembling, and any unfair way by which another is cheated."[23] "Actual fraud is intentional, and consists of intentional deception to induce another to part with property or to surrender some legal right, and which accomplishes the end designed."[24]

"Misrepresentation and misconduct are separate grounds for relief under Rule 60(b)(3) apart from fraud, and neither necessitates showing purposeful misconduct or malice."[25] Courts examining the question have broadly held that "misrepresentation" and "misconduct" under Rule 60(b)(3) do not "require proof of nefarious intent or purpose" but can include negligent and accidental omissions during the course of

---

[23] *State ex rel. Medical Assurance of W.Va., Inc. v. Recht*, 213 W.Va. 457, 474, 583 S.E.2d 80, 97 (2003) (Davis, J., concurring) (quoting *Volcanic Gardens Mgmt. Co. v. Paxson*, 847 S.W.2d 343, 347 (Tex. App. 1993)).

[24] *Stanley v. Sewell Coal Co.*, 169 W.Va. 72, 76, 285 S.E.2d 679, 682-83 (1981).

[25] *Scott v. United States*, 81 F.Supp.3d 1326, 1338-39 (M.D. Fla. 2015). As one court noted,

> Were the term 'misrepresentation' as used in Rule 60(b)(3) interpreted to encompass only false statements made with the intention to deceive, the behavior described by that word would be wholly subsumed within the category of behavior that the same subsection of the rule refers to as 'fraud.' Such a narrow reading of the word would render it superfluous for purposes of Rule 60(b)(3) and would thus conflict with the established principle of statutory construction that all words within a statute are intended to have meaning and should not be construed as surplusage.

*United States v. One (1) Douglas A–26B Aircraft*, 662 F.2d 1372, 1375 n. 6 (11th Cir. 1981).

discovery, or during trial.[26]  Put simply, Rule 60(b)(3) applies to unintentional, accidental and careless misconduct or misrepresentations as well as intentional ones.[27]

---

[26] *Anderson v. Cryovac, Inc.,* 862 F.2d at 923.

[27] *See*, *e.g.*, *Lonsdorf v. Seefeldt,* 47 F.3d at 897 (Rule 60(b)(3) "applies to both intentional and unintentional misrepresentations."); *Schultz v. Butcher,* 24 F.3d 626, 630 (4th Cir. 1994) ("[A]n adverse party's failure, either inadvertent or intentional, to produce such obviously pertinent requested discovery material in its possession is misconduct under the meaning of Rule 60(b)(3)."); *Jones v. Aero/Chem Corp.*, 921 F.2d 875, 879 (9th Cir. 1990) ("'Misconduct' does not demand proof of nefarious intent or purpose as a prerequisite to redress. . . . The term can cover even accidental omissions. . . . Accidents—at least avoidable ones—should not be immune from the reach of the rule."); *In re M/V Peacock on Complaint of Edwards,* 809 F.2d at 1405 (negligent misrepresentations may support relief from judgment under Rule 60(b)(3)); *Bros Inc. v. W. E. Grace Mfg. Co.*, 351 F.2d 208, 211 (5th Cir. 1965) (A party can obtain relief due to misrepresentation even in the absence of "a deliberate evil purpose to misstate or conceal or thereafter engage in foot-dragging lest the truth might be uncovered."); *Scott v. United States*, 81 F.Supp.3d at 1339 ("Unintentional neglect in failing to comply with discovery requirements, or negligent misrepresentations to the court, can satisfy the requirements of Rule 60(b)(3), and thus the Court may not deny relief under Rule 60(b)(3) only because Petitioner has not shown intentional misconduct."); *Corcoran v. McCarthy*, 778 N.W.2d 141, 148 (S.D. 2010) ("[W]hen fraud is not alleged, a majority of courts have concluded that misconduct in failing to disclose or produce may be careless, accidental, or even innocent under Rule 60(b)(3)."); *Outback Steakhouse of Florida, Inc. v. Markley*, 856 N.E.2d 65, 73 (Ind.2006) ("[W]e readily conclude that 'misconduct' under Indiana's Rule 60(b)(3) can include both negligent and intentional violations of Indiana's discovery rules."); *Catskill Devel., L.L.C. v. Park Place Entm't Corp.*, 286 F.Supp.2d 309, 314 (S.D.N.Y.2003) ("[E]ven an accidental failure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of Rule 60(b)(3)."); *Norwest Bank (MN) v. Symington*, 3 P.3d 1101, 1106 (Ariz.Ct.App.2000) ("[A] failure to disclose evidence that may be relevant, regardless of whether the disclosure was required by a specific discovery request or by the general duty of Rule 26.1, can constitute misconduct under Rule 60(c)(3)."); *MMAR Group, Inc. v. Dow Jones & Co., Inc.*, 187 F.R.D. 282, 285 (S.D.Tex. 1999) (quoting *Anderson*).  *See also*, 12 *Moore's Federal Practice* § 60.43[1][a] (3d ed. 2015) ("Under Rule 60(b)(3), both intentional and unintentional misrepresentations and failures to disclose are a sufficient basis for relief.").

Regardless of the specific form of the allegation, the moving party under Rule 60(b)(3) "must, by adequate proof, clearly substantiate the claim of fraud, misconduct or misrepresentation."[28] In other words, the moving party must show clear and convincing evidence of fraud, misrepresentation, or misconduct.[29]

## 2. Full and Fair Preparation or Presentation

The linchpin of a motion under Rule 60(b)(3) is that the moving party must demonstrate it was prevented from fully and fairly presenting a claim or defense. "[B]efore retrial is mandated under Rule 60(b)(3) . . . the challenged behavior must substantially have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial,"[30] or "be such as prevented the losing party from fully and fairly presenting his case or defense."[31] Relief can be afforded if the conduct complained of "precluded inquiry into a plausible theory of liability, denied it access to evidence that

---

[28] *Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d at 1290 (citing *Wilkin v. Sunbeam*, 466 F.2d 714, 717 (10th Cir.1972)).

[29] *See*, *e.g.*, *Ervin v. Wilkinson*, 701 F.2d 59, 61 (7th Cir. 1983) ("to prevail under a Rule 60(b)(3) claim for fraud it is incumbent upon the movant to establish the fraud complained of by clear and convincing evidence."); *Square Const. Co. v. Washington Metro. Area Transit Auth.*, 657 F.2d 68, 71 (4th Cir. 1981) ("A party seeking relief under subsection (3) of the rule must also prove the misconduct complained of by clear and convincing evidence[.]"); *Rozier v. Ford Motor Co.*, 573 F.2d at 1339 ("One who asserts that an adverse party has obtained a verdict through fraud, misrepresentation or other misconduct has the burden of proving the assertion by clear and convincing evidence.").

[30] *Anderson v. Cryovac, Inc.*, 862 F.2d at 924.

[31] *Rozier v. Ford Motor Co.*, 573 F.2d at 1339.

could well have been probative on an important issue, or closed off a potentially fruitful avenue of direct or cross examination."[32]

Rule 60(b)(3) is aimed at judgments which were unfairly obtained, not at those which are factually incorrect.[33] This subsection of the Rule protects the fairness of the proceedings; it does not protect the correctness of verdicts. Hence, a determination as to whether the adverse party's fraud, misrepresentation, or misconduct served to change the outcome of the case is unnecessary.[34] A party moving under Rule 60(b)(3) may prevail without showing that the alleged misconduct altered the result of the prior trial,[35]

---

[32] *West v. Bell Helicopter Textron, Inc.*, 803 F.3d 56, 67 (1st Cir. 2015) (quoting *Anderson*, 862 F.2d at 925).

[33] *Rozier v. Ford Motor Co.*, 573 F.2d at 1339. For example, in *Graley v. Graley*, 174 W.Va. 396, 327 S.E.2d 158 (1985), a wife sought to set aside an unfavorable divorce judgment, partly because the wife could not attend the final hearing. The wife "did not attend the hearing, because her husband had, the night before, beaten her to the point that she required hospitalization." *Id.*, 174 W.Va. at 397, 327 S.E.2d at 159. This Court found the wife had established misconduct of an adverse party sufficient to set aside the divorce judgment under Rule 60(b)(3).

[34] Rule 60(b)(2) is aimed at factually incorrect judgments shown as a result of newly discovered evidence. Unlike Rule 60(b)(3), Rule 60(b)(2) requires proof that the new evidence "is material and controlling and clearly would have produced a different result if present before the original judgment." *Goldstein v. MCI WorldCom*, 340 F.3d 238, 257 (5th Cir. 2003).

[35] *See Anderson v. Cryovac, Inc.*, 862 F.2d at 924 ("Another well-sculpted marker points out that misconduct need not be result-altering in order to merit Rule 60(b)(3) redress."); *Plattner v. Strick Corp.*, 102 F.R.D. at 614 ("Because Rule 60(b)(3) functions to protect the fairness of the proceedings and not the correctness of the verdict, a determination as to whether the allegedly misrepresented testimony served to alter the result of the case is unnecessary."); *Wilson v. Thompson*, 638 F.2d 801, 804 (5th Cir. 1981) ("[A] party moving under Rule 60(b)(3) may prevail without showing that the alleged fraud affected the outcome of the prior trial."); *Rozier v. Ford Motor Co.*, 573

(continued . . .)

17

and without showing "that he or she would prevail in a retrial[.]"[36]  To reiterate, all that is required is a clear showing that the fraud, misrepresentation, or misconduct substantially interfered with the aggrieved party's ability to fully and fairly prepare for or proceed at trial.

### 3. Discovery Abuse

A party's "[f]ailure to disclose or produce materials requested in discovery can constitute 'misconduct' within the purview of" Rule 60(b)(3).[37]  "[W]here discovery material is deliberately suppressed, its absence can be presumed to have inhibited the unearthing of further admissible evidence adverse to the withholder, that is, to have substantially interfered with the aggrieved party's trial preparation."[38]  However, "even an accidental failure to disclose or produce materials requested in discovery can constitute misconduct within the purview of Rule 60(b)(3)."[39]  Misconduct and misrepresentation under Rule 60(b)(3) can result from unintentional omissions in ineptly

---

F.2d at 1339 (Rule 60(b)(3) "does not require that the information withheld be of such nature as to alter the result in the case.").

[36] 12 *Moore's Federal Practice* § 60.43[1][d] (3d ed. 2015).

[37] *Anderson v. Cryovac, Inc.*, 862 F.2d at 923.  *See also*, *Stridiron v. Stridiron*, 698 F.2d at 206-07 ("Failure to disclose or produce evidence requested in discovery can constitute Rule 60(b)(3) misconduct."); *Rozier v. Ford Motor Co.*, 573 F.2d at 1339 ("Rule 60(b)(3) applies to misconduct in withholding information called for by discovery[.]").

[38] *West v. Bell Helicopter Textron, Inc.*, 803 F.3d at 67 (*quoting Anderson v. Cryovac, Inc.*, 862 F.2d at 925).

[39] *Litigation Handbook on West Virginia Rules of Civil Procedure* at 1310.

researched, carelessly prepared discovery responses that obfuscate or effectively hide key evidence from the opposing party. "[I]t takes scant imagination to conjure up discovery responses which, though made in good faith, are so ineptly researched or lackadaisical that they deny the opposing party a fair trial."[40]

## 4. Perjury

Perjury (that is, intentional lies) during the course of discovery or trial may also support relief under Rule 60(b)(3), but only that which substantially interferes with the fairness of the final judgment.[41] "A litigant's use of perjured testimony to secure a jury verdict so corrupts the integrity of the factfinding process that a court may . . . set aside the verdict when the newly discovered evidence [of perjury], even though in the nature of impeachment evidence, establishes that perjured testimony impaired a party's

---

[40] *Anderson v. Cryovac, Inc.*, 862 F.2d at 923. The *Anderson* court pointed out that evidence not produced during discovery may turn out to be "cumulative, insignificant, or of marginal relevance . . . The solution, we believe, is that before retrial is mandated under Rule 60(b)(3) in consequence of discovery misconduct, the challenged behavior must *substantially* have interfered with the aggrieved party's ability fully and fairly to prepare for and proceed at trial." *Id.* at 924. Where the failure to produce discovery material "was knowing and purposeful," the *Anderson* court suggests a court should presume the misconduct "substantially interfered with the aggrieved party's trial preparation." *Id.* at 925.

[41] *Diaz v. Methodist Hosp.*, 46 F.3d 492, 497 (5th Cir. 1995) ("If unequivocal evidence establishes that a party willfully perjured himself, and thereby prevented the opposition from fully and fairly presenting its case, use of Rule 60(b)(3) to grant the innocent party a new trial would be a proper response."); *Tas Int'l Travel Serv., Inc. v. Pan Am. World Airways, Inc.*, 96 F.R.D. 205, 208 (S.D.N.Y. 1982) ("When a final judgment is attacked on grounds that it was procured by false testimony . . . the better course is to resolve this conflict in favor of assuring the fairness and integrity of judgments[.]").

ability to fairly and fully litigate a material issue in the case."[42]  Rule 60(b)(3) is targeted

at "fraud or misstatements perpetrated in the course of litigation or other misconduct

aimed directly at the trial process[.]"[43]  "[C]onclusory allegations of perjury are

insufficient to establish by clear and convincing evidence that the judgment was obtained

by fraud or misconduct."[44]  In addition, conflicting accounts of an event do not alone

demonstrate perjury.[45]  To succeed on an allegation of perjurious testimony alone,

---

[42] *Aspen Skiing Co. v. Peer*, 804 P.2d 166, 174 (Colo. 1991).

[43] *Roger Edwards, LLC v. Fiddes & Son Ltd.*, 427 F.3d 129, 134 (1st Cir. 2005).  It is important here to grasp the distinction

> between fraud or misstatements that are committed during the course of a commercial transaction (such as a false statement about the quality of goods being sold), and fraud or misstatements perpetrated in the course of litigation (such as perjury of a witness or the introduction of a false document into evidence). The former is the subject-matter of litigation, meant to be investigated through the discovery process and resolved by the evidence at trial. . . .
>
> By contrast, fraud perpetrated in the course of litigation interferes with the process of adjudication, and it is this kind of litigation-related fraud that principally concerns Rule 60(b)(3)'s fraud provision.

*Id.*

[44] *Hopson v. Protein Technologies International*, 19 Fed. Appx. 336, 337 (6th Cir. 2001).  *See also, Martin v. Chemical Bank*, 129 F.3d 114 (2d Cir.1997) (same); *Atkins v. Weaver*, 967 F.2d 582 (9th Cir.1992) (same).

[45] *Kissinger–Campbell v. C. Randall Harrell, M.D.*, 418 Fed. Appx. 797, 805 (11th Cir.2011) ("The testimony of Zbella and DeLuca merely indicates that there are conflicting accounts on precisely when certain past events occurred. This is not evidence of perjury or a conspiratorial scheme to concoct a false story, as Defendants allege.");

(continued . . .)

"fraud" under Rule 60(b)(3) requires the moving party to demonstrate that a witness testified, under oath, to a materially false statement under circumstances where the witness did not believe the statement to be true.[46]

"The possibility of perjury, even concerted, is a common hazard of the adversary process with which litigants are equipped to deal through discovery and cross-examination[.]"[47] It is therefore only in the exceptional case, where the judgment has been unfairly obtained, that a court may set aside a final judgment merely because some testimony is perjured. As Judge (later Justice) Brennan once said, "All perjury is an affront to the dignity of the court and to the integrity of the judicial process," and courts should "follow the equity of the matter and . . . take away an unjust judgment obtained by vital perjury when the injustice and inequity of allowing it to stand are made evident."[48]

### 5. Summary of Rule 60(b)(3) Guideposts

In summary, we hold that to prevail under Rule 60(b)(3), the moving party must establish by clear and convincing evidence that the opposing party obtained a judgment by fraud, misrepresentation, or other misconduct, and that this conduct

---

*Ricciuti v. New York City Transit Auth.*, 70 F.Supp.2d 300, 315 (S.D.N.Y.1999) (fact that plaintiffs' account of events differed was insufficient to demonstrate perjury).

[46] *See generally* W.Va. Code § 61-5-1 [1996] (defining perjury); W.Va. Code § 61-5-2 [1923] (defining false swearing).

[47] *George P. Reintjes Co. v. Riley Stoker Corp.*, 71 F.3d 44, 49 (1st Cir. 1995).

[48] *Shammas v. Shammas*, 9 N.J. 321, 329-30, 88 A.2d 204, 208-09 (1952).

prevented the moving party from fully and fairly preparing or presenting a claim or a defense. In considering these requirements, the trial court must balance the principles that litigation must be brought to an end and that justice should be done. A final judgment should be rarely disturbed, particularly one based on a jury verdict returned after a trial on the merits. Fraud under Rule 60(b)(3) generally involves intentional acts. However, misrepresentation and misconduct may involve negligent or intentional actions. This subsection of the rule is aimed at judgments that were unfairly obtained, not at those that are merely factually incorrect. Hence, the moving party may prevail without showing that the adverse party's fraud, misrepresentation, or misconduct altered the result of the prior trial.

### C. *Gerver v. Benevides*

The parties dispute whether our holding should be controlled by this Court's opinion in *Gerver v. Benavides*, 207 W.Va. 228, 530 S.E.2d 701 (1999) (*per curiam*). In *Gerver*, a plaintiff obtained a sizeable judgment for severe pain from a botched vasectomy in a medical malpractice case. After entry of the judgment, the defendant physician hired an investigator to follow and videotape the plaintiff. On the basis of the videotape, the defendant alleged the plaintiff had committed fraud because his pain did not seem as severe as was alleged at trial. The defendant filed a motion under Rule 60(b)(3) to set aside the judgment for fraud, a motion the trial court granted.

On appeal, this Court reinstated the judgment. In a *per curiam* opinion, the Court found the defendant had failed to show clear and convincing evidence of fraud,

22

because nothing in the videotape "contradict[ed] the plaintiffs' testimony regarding the inception and duration of his pain, and the debilitating effect of that pain on his life."[49] Instead, the evidence confirmed the plaintiff's testimony at trial. As a concurring opinion made clear, the defendant never investigated or disputed the extent of the plaintiff's pain until after the jury returned its verdict. The defendant conceded at trial that "*something went wrong*" with the plaintiff's surgery, and conceded that the plaintiff was in severe pain. The defendant's sole argument at trial was that the proof did not rise to the level of medical malpractice, an argument rejected by the jury.[50]

Problematic with the *Gerver* decision are two broad statements of the law, both of which are incorrect in light of our earlier analysis of Rule 60(b)(3). The first addressed the defendant's argument that the surveillance videotape was "newly-discovered evidence" of misrepresentations by the plaintiff.[51] A trial court may set aside a judgment for newly-discovered evidence pursuant to Rule 60(b)(2), and under that subsection, "The evidence must be material, admissible, credible, *not merely cumulative or impeaching*, and likely to change the outcome upon retrial."[52] The *Gerver* Court,

---

[49] *Gerver v. Benavides*, 207 W. Va. at 232, 530 S.E.2d at 705.

[50] 207 W. Va. at 236, 530 S.E.2d at 709 (Starcher, C.J., concurring).

[51] 207 W.Va. at 233, 530 S.E.2d at 706.

[52] *Peacock v. Bd. of Sch. Comm'rs of City of Indianapolis*, 721 F.2d 210, 213-14 (7th Cir. 1983).

23

however, mistakenly conflated these requirements with Rule 60(b)(3).[53]  As we have previously discussed, Rule 60(b)(3) permits a court to set aside a judgment for any clearly established fraud, misrepresentation or other misconduct, so long as it prevented the movant from fully and fairly preparing or presenting its case.

The second broad, incorrect statement in *Gerver* is that "Rule 60(b)(3) requires proof of intentional deception or misrepresentation by clear and convincing evidence."[54]  As we have previously discussed, only fraud under Rule 60(b)(3) tends to require an intent to deceive.  Rule 60(b)(3) does permit relief for unintentional, accidental and careless misconduct or misrepresentations as well as intentional ones.

We see nothing in the discussion of *Gerver* to suggest the Court's assessment of the trial record was wrong.  Had the *Gerver* Court applied the analysis set forth in this opinion, the Court would have reached the same result.  We simply find that the *Gerver* Court broadly stated two points of law that, upon careful reflection, are simply wrong.  Accordingly, to the extent that *Gerver* conflicts with this opinion, it is overruled.

### D.  Misrepresentation and Misconduct by the Defendant

Plaintiff Phillips established a *prima facie*, meritorious claim at trial. Witness testimony identified the license plate on defendant Stear's vehicle, and indicated

---

[53] *Gerver*, 207 W.Va. at 233, 530 S.E.2d at 706 (stating that newly discovered evidence affecting only credibility cannot be the basis for a new trial).

[54] 207 W.Va. at 233, 530 S.E.2d at 706.

that Stear (after making an offensive hand gesture toward Phillips) veered in front of Phillips's truck and slammed on his brakes. Phillips's attempt to avoid Stear's vehicle caused him to wreck. Stear's defense that he did not cause the accident was bolstered by his inadmissible character testimony that he was a careful driver who did not speed, and had no recent traffic citations that he could recall. Although there was no objection to this testimony, Phillips had the right to question Stear about other citations to test his credibility.

Based upon the record before this Court, plaintiff Phillips satisfied the requirements for granting a Rule 60(b)(3) motion. First, the plaintiff clearly established that Stear engaged in misconduct or misrepresentation in discovery by failing to reveal prior traffic citations. Phillips proffered the following interrogatory to Stear about traffic citations:

> Interrogatory No. 18: Please list any traffic citation or other crime, whether it be a misdemeanor or felony, that the defendant has ever been charged with or convicted and provide the court disposition sheet for each offense.

> Answer: Defendant received one traffic citation approximately five years ago in St. Louis, Missouri. Specifically, Defendant was cited for speeding, and paid a fine. Defendant tried to retrieve the disposition sheet in the past for submission to an employer and was told the record no longer exists.

Stear answered the interrogatory on September 15, 2011. Phillips later discovered that Stear had been convicted on a traffic citation *six weeks earlier*, on August 1, 2011, for driving 15 miles or more above the speed limit. Stear failed to mention this recent traffic citation in his discovery answers. Phillips also found a conviction for reckless driving in

25

2001, and an affidavit from Stear's ex-wife suggested four or five other traffic citations between 2001 and 2006.[55] Stear failed to reveal these traffic citations as well.

Furthermore, the circuit court interpreted Rule 60(b)(3) to require proof of "intentional deception or misrepresentation" by Stear in order for Phillips to succeed. This interpretation of the rule was incorrect. Rule 60(b)(3) applies to unintentional, accidental, and careless misrepresentations or misconduct as well as those that are nefarious and intentional. On this record, we cannot say whether Stear's trial testimony rises to a level of willful fabrication, perjury and fraud, or whether it simply shows the usual shortcomings in human perception and memory. However, if we give Stear the benefit of the doubt that he simply "forgot" or could not recall these prior interactions with law enforcement, then his misconduct in drafting his discovery response certainly falls into the category of being "so ineptly researched or lackadaisical that [it] den[ied] the opposing party a fair trial."[56]

Second, plaintiff Phillips was substantially and unfairly prejudiced by Stear's concealment of, or failure to reveal, his prior traffic citations. Stear's trial defense was built around his ordinarily inadmissible character assertion that he would never speed

---

[55] Stear does not dispute receiving these additional citations. Instead, Stear obtained a supplemental affidavit from his ex-wife where she said that, although she recalls Stear being given traffic citations for speeding, she did not know whether Stear was ever convicted of those citations. We do not see how this is in any way persuasive, since Phillips's interrogatory asked about "any traffic citation . . . that the defendant has *ever been charged with* or convicted[.]"

[56] *Anderson v. Cryovac, Inc.*, 862 F.2d at 923.

26

or violate other traffic laws.[57]  Stear's character, by his own counsel's volition, became a material issue in the case.  It was Stear, through questioning by his own lawyer, who testified that his last traffic citation was in 2006.  Evidence of a defendant's driving record is inadmissible to establish negligence or a lack thereof.  As Rule 404(a)(1) of the *West Virginia Rules of Evidence* says, "Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait."  But once defense counsel interposed Stear's nature as a careful driver who always observed speed limits as a defense, plaintiff's counsel was then free to test the credibility of that defense.[58]

At trial, it appears that plaintiff's counsel had procured a printout showing Stear's August 2011 traffic citation and conviction.  It is axiomatic that "a witness may be impeached on the basis of prior inconsistent actions."[59]  After plaintiff's counsel

---

[57] Stear testified he would use his two-hour interstate drive to and from work as a time to "relax and maybe pray."  He also asserted that his wife's sisters are both police officers, and if he had "pulled a shenanigan" like he was accused of, his wife would "have her sisters take care of me."

[58] In *Moore v. Skyline Cab, Inc.*, 134 W.Va. 121, 131, 59 S.E.2d 437, 443 (1950), a tort defendant testified "he was by nature a careful driver and . . . he always observed speed limits when driving an automobile[.]"  The plaintiff's counsel was then permitted to ask the defendant about a reckless driving conviction two years before the alleged tort, because "evidence of his plea of guilty to a prior offense was admissible" to the extent it affected the credibility of the defendant.  *Id.*, 134 W.Va. at 132-33, 59 S.E.2d at 443-44.  *See also* W.Va.R.Evid. Rule 404(b)(1) ("Evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.").

[59] Steven Lubet, "Understanding Impeachment," 15 Am. J. Trial Advoc. 483, 529 (1992).  A defendant's prior traffic citations, wholly unrelated to the case at

(continued . . .)

repeated verbatim Stear's testimony that he had not had a traffic citation since 2006,[60] he attempted to impeach Stear using the August 2011 conviction.

Unfortunately, the circuit court interrupted and incorrectly decided that because the printout of the conviction was not certified it could not be used for impeachment. Moreover, the circuit court lectured plaintiff's counsel that he could "be in trouble" because "these are for law enforcement purposes" and "are not certified records of any kind of conviction." At the urging of defense counsel, the circuit court instructed the jury to reject any suggestion by plaintiff's counsel that Stear had any prior traffic citations. Plaintiff's counsel claims the circuit court's admonitions "unnerved" him, and gave the jury the appearance he had done something unlawful and had tried to "pull a fast one" by using an "unacceptable document." The circuit court essentially traded the defendant's credibility about traffic citations for that of plaintiff's counsel.

Nevertheless, the record firmly establishes that Stear's misconduct or misrepresentations in concealing, or failing to reveal, his other prior traffic citations prevented Phillips from fully and fairly preparing for trial, and from fully and fairly

hand, are usually inadmissible. But in this case, the defendant made his lack of traffic citations an issue at trial. Hence, because his prior citations had "a direct impact on the credibility of the witness," and became "a direct reason for [him] to fabricate or shade [his] testimony," evidence of the defendant's prior inconsistent actions became admissible. *Id.*, 15 Am. J. Trial Advoc. at 489.

[60] "[T]here is no strict rule of evidence that requires a cross examiner to repeat verbatim the witness's about-to-be-impeached testimony. The purpose of recommitment is only to focus attention on the inconsistency between the courtroom testimony and the prior statement." *Id.*, 15 Am. J. Trial Advoc. at 501.

28

litigating a material issue, namely the defendant's character. The complained of conduct precluded Phillips from effectively challenging Stear's claim that he was a careful driver who always observed speed limits, and closed off a potentially fruitful avenue of cross-examination. We cannot, and need not, say that the defendant's actions altered the result of the case, or that the jury's verdict was factually incorrect. All that we can say is that this judgment was unfairly obtained.

We have carefully considered the parties' arguments in light of the policy of protecting the finality of judgments. On this record, the circuit court abused its discretion in failing to set aside the judgment order.

### IV.
### CONCLUSION

The circuit court's October 20, 2014, order denying the plaintiff relief under Rule 60(b)(3) is reversed, the circuit court's April 10, 2014, judgment order is set aside, and the action is remanded for further proceedings.

Reversed and remanded.

29