IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

**FILED**
**May 1, 2026**

ASHLEY N. DEEM, CHIEF DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**IN RE: M.A.G., a minor**

**No. 25-ICA-475**   (Fam. Ct. Berkeley Cnty. Case No. FC-02-2025-FIG-13)

## MEMORANDUM DECISION

Petitioner Osvaldo G.[1] ("Uncle") appeals the Family Court of Berkeley County's November 7, 2025, order denying his motion for reconsideration of the court's September 25, 2025, uncontested[2] Order of Appointment of Minor Guardian.[3]

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2024). After considering the parties' arguments, the record on appeal, and the applicable law, this Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the family court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

On July 2, 2025, the paternal Uncle of the minor child, M.A.G., filed a petition for guardianship requesting that the family court appoint him as M.A.G.'s legal guardian.[4]

---

[1] To protect the confidentiality of the juveniles involved in this case, we refer to the parties' last name by the first initial. *See*, *e.g.*, W. Va. R. App. P. 40(e); *State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990).

[2] No other parties participated in this matter; M.A.G.'s biological parents were deceased prior to the filing of Uncle's petition.

[3] Uncle is represented by Taylor E. Smith, Esq., Lesley D. Yost, Esq., and qualified student attorneys under Rule 10 of the West Virginia Rules for Admission to the Practice of Law, Christina Houston and Taylor Cochran, appearing under the supervision and consent of Lesley D. Yost, and through West Virginia University's Immigration Law Clinical Program.

[4] M.A.G. was born in Juarez City, Mexico, in May of 2008. According to M.A.G.'s May 20, 2025, notarized sworn statement, his father was murdered when M.A.G. was five months old. M.A.G. lived with his mother for the first nine years of his life. He stated that his mother spent all her money on drugs, so he was often hungry and neglected. His mother sent him and his siblings to live with his grandmother's friend in Oaxaca, Mexico, when he was nine. His mother only visited them three times while he resided there and never provided any material or financial support, but his grandmother sent the friend money for

1

Uncle also filed a motion seeking the entry of an order containing specific findings due to the child's citizenship status and a memorandum of points and authorities in support of the motion. In this motion, Uncle alleged that M.A.G. could not return to Mexico because M.A.G.'s father was deceased, and his mother, who had abandoned him, was now also deceased.[5] The specific findings Uncle requested would enable M.A.G. to petition the United States Citizenship and Immigration Services ("USCIS") for Special Immigrant Juvenile Status ("SIJS") pursuant to Section 1101(a)(27)(J) (2023) of the Immigration and Nationality Act.[6] Uncle asserted that the child was seeking relief from removal from the United States by applying for SIJS and could apply for lawful permanent residency if the USCIS approved his SIJS application. *See* 8 U.S.C. § 1255(a), (h) (2022). Uncle's petition for guardianship maintained that the child's only family resided in Berkeley County, West Virginia, and there was no individual willing to provide care for him in Mexico.

On September 25, 2025, the family court held a final hearing on Uncle's petition for guardianship. Uncle testified that M.A.G. had resided with him for approximately one year and was enrolled in Hedgesville High School. During the hearing, the court orally informed Uncle that his petition for guardianship would be granted. Counsel for Uncle then orally moved the court to include the requested specific findings in its order so that M.A.G. could petition the USCIS for SIJS.

---

food and clothes. In September of 2024, he traveled from Mexico to the United States with his older brother to live with Uncle and his grandmother. Upon entering the United States, M.A.G. was held at an Office of Refugee Resettlement shelter and released to Uncle in October of 2024. M.A.G. has lived with Uncle since October of 2024 and states that he has a good life, feels loved and cared for, and wants to continue living with Uncle as his guardian.

[5] M.A.G.'s mother died after he arrived in the United States. Uncle filed the death certificates of M.A.G.'s parents when he filed his petition for guardianship.

[6] To qualify for SIJS, applicants must be physically present in the United States, unmarried, under the age of twenty-one, and must obtain an order of dependency from a state juvenile court before applying to USCIS. *See* 8 U.S.C. § 1101(a)(27)(J)(i); *see also* 8 C.F.R. § 204.11(c). That order requires the juvenile court to find: (1) that the applicant is "dependent on a juvenile court . . . or placed under the custody" of someone appointed by the state; (2) that "it would not be in the alien's best interest to be returned to the alien's or parent's previous country of nationality or . . . habitual residence"; and (3) that "reunification with 1 or both of the immigrant's parents is not viable due to abuse, neglect, abandonment, or a similar basis found under State law." 8 U.S.C. § 1101(a)(27)(J)(i), (ii); *see also* 8 C.F.R. § 204.11(a), (c).

At the conclusion of the hearing, the family court entered an order granting Uncle's petition and appointed him as the child's legal guardian. The court used the same or similar language contained in the Supreme Court of Appeals of West Virginia's standard appointment of guardianship order form.

Relevant to this appeal, the family court's order made the following findings:

The following individual who is the subject of this proceeding is minor [sic] under West Virginia law, being under the age of 18 years and not married[.][7]
. . .

Venue is proper in this [c]ourt regarding each minor named in the preceding finding because each such minor is: a current state resident of this county.
. . .

The parents of the minor(s) are:

Father: . . . who is deceased.
Mother: . . . who is deceased[.]
. . .

Giving precedence to the welfare and best interest of the minor and the importance of a competent and fit guardian, based upon the evidence presented, and, to the extent applicable, further taking into account the priority for consideration for appointment to be afforded the parents of the minor, the [c]ourt hereby finds and concludes that: [Uncle] the appropriate guardian over the person of the minor named in Paragraph 1 above.
. . .

[T]he basis for the above determination is as follows:

a. It is in the child's best interest to have [Uncle] named as guardian for the child as the [c]ourt is unaware of alternative viable options.

b. The [c]ourt also finds there is an immediate need for the appointment of a guardian in order to protect the welfare and best interests of the minor until such time that the guardian(s) appointed herein qualify by giving the required bond.

On October 25, 2025, Uncle filed a motion for the family court to reconsider the guardianship order, asserting that the order should be amended. Uncle contended that the

---

[7] The order then listed M.A.G.'s full name, age, and date of birth.

September 25, 2025, order appointing him as the child's guardian did not address the specific findings required under Section 1101(a)(27)(J) of the Immigration and Nationality Act and asked the family court to reconsider and amend the guardianship order to reflect the following specific findings:

> a. [M.A.G.] is under 21 years old and unmarried.
>
> b. This [c]ourt has jurisdiction under West Virginia law to make judicial determinations about the guardianship, custody, and care of juveniles.
>
> c. Reunification with one or both of [M.A.G.'s] parents is not viable due to abuse, neglect, abandonment, or a similar basis found under state law.
>
> d. It would not be in [M.A.G.'s] best interest to return to his parents' previous country of nationality or country of last habitual residence—Mexico.

On November 7, 2025, the family court entered an order denying Uncle's motion for reconsideration. Regarding the first three specific findings, the court explained that a reasonable person reviewing the guardianship order could rationally glean and determine that M.A.G. was under twenty-one and unmarried, that the court had proper jurisdiction to appoint a guardian for M.A.G., and that reunification with M.A.G.'s parents was not viable because they were deceased. The court further found that because the death of both parents were grounds for the guardianship order, the issues of abandonment and abuse were moot. Regarding the fourth finding, the court explained that it was neither necessary nor required to make such a finding when appointing a guardian pursuant to chapter forty-four article ten of the West Virginia Code, and that the court was "without any information as to whether or not returning him to Mexico would be in his best interest or not." It is from this November 7, 2025, order denying Uncle's motion for reconsideration that he now appeals.

When reviewing the order of a family court, we apply the following standard of review:

> When a final order of a family court is appealed to the Intermediate Court of Appeals of West Virginia, the Intermediate Court of Appeals shall review the findings of fact made by the family court for clear error, and the family court's application of law to the facts for an abuse of discretion. The Intermediate Court of Appeals shall review questions of law de novo.

Syl. Pt. 2, *Christopher P. v. Amanda C.*, 250 W. Va. 53, 902 S.E.2d 185 (2024); *accord* W. Va. Code § 51-2A-14(c) (2005) (specifying standards for appellate court review of family court orders).

Uncle argues two assignments of error on appeal that will be consolidated for clarity and efficiency. *See generally Tudor's Biscuit World of Am. v. Critchley*, 229 W. Va. 396, 402, 729 S.E.2d 231, 237 (2012) (stating that "the assignments of error will be consolidated and discussed accordingly"). Uncle first contends that the family court erred by finding that it did not have jurisdiction to make his requested SIJS special findings.[8] His second assignment of error asserts that the family court erred by failing to consider and make determinations regarding the special SIJS findings because he properly raised the issue in his petition for guardianship. We disagree.

Motions for reconsideration of family court orders are governed by West Virginia Code § 51-2A-10(a) (2001), which provides the following:

> Any party may file a motion for reconsideration of a temporary or final order of the family court for the following reasons: (1) Mistake, inadvertence, surprise, excusable neglect or unavoidable cause; (2) newly discovered evidence which by due diligence could not have been available at the time the matter was submitted to the court for decision; (3) fraud, misrepresentation or other misconduct of an adverse party; (4) clerical or other technical deficiencies contained in the order; or (5) any other reason justifying relief from the operation of the order.

This Court has explained that a motion for reconsideration under this section "is not an opportunity to reargue facts upon which a court has already ruled." *Kaitlyn G. v. Jonathon C.*, No 23-ICA-553, 2024 WL 3252327, at *3 (W. Va. Ct. App. July 1, 2024) (memorandum decision); *Kierstyn C. v Justin B.*, No. 23-ICA-200, 2024 WL 1256070, at *4 (W. Va. Ct. App. March 25, 2024) (memorandum decision) ("A motion for reconsideration is simply not an opportunity to relitigate facts upon which a court has already ruled."); *see also Phillips v. Stear*, 236 W. Va. 702, 711, 783 S.E.2d 567, 576 (2016) (explaining that the analogous Rule 60(b) motion "is designed to address mistakes attributable to special circumstances and not merely to erroneous applications of law.") (citation modified).

Here, Uncle requested the specific SIJS findings when he first filed his petition for guardianship on July 2, 2025; his accompanying motion specifically asked the court to include those findings in the guardianship order. Additionally, counsel for Uncle made the same request during the court's September 25, 2025, guardianship hearing. The only order before this Court is the order denying Uncle's motion for reconsideration and West Virginia Code § 51-2A-10(a) along with supporting case law is clear—a motion for

---

[8] The family court stated from the bench that it was unaware whether it was within the family court's jurisdiction to make the requested SJIS findings, but this comment on jurisdiction is not in the order on appeal.

reconsideration is simply not an opportunity for a party to have a "second bite of the apple." Uncle's motion for reconsideration was based on facts and arguments that were already presented at the September 25, 2025, hearing and ruled upon in the family court's guardianship order. As such, we are unable to conclude that the family court clearly erred or abused its discretion in denying Uncle's motion for reconsideration.

Accordingly, we affirm the family court's November 7, 2025, order.

Affirmed.

**ISSUED:** May 1, 2026

**CONCURRED IN BY:**

Chief Judge Daniel W. Greear
Judge Charles O. Lorensen
Judge S. Ryan White